**Affirmed and Majority and Dissenting Opinions filed October 15, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00642-CR

---

**KENNETH LEE DOUDS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 1 & Probate Court**
**Brazoria County, Texas**
**Trial Court Cause No. 180270**

---

## M A J O R I T Y   O P I N I O N

Appellant Kenneth Lee Douds was charged with driving while intoxicated; after the trial court denied his motion to suppress evidence, he pleaded guilty to a reduced charge as part of a plea agreement. In this appeal, he challenges the trial court's order denying his motion to suppress and argues that a section of the Texas Transportation Code is unconstitutional. We affirm.

# BACKGROUND

At about 2:34 a.m. on May 16, 2010, Officer Andre Tran of the Pasadena Police Department responded to a call regarding an automobile accident. Two vehicles were involved in the accident; the occupants of both vehicles were friends who recently had left the same party. The appellant and his wife were in one vehicle, and the appellant was driving when he struck the other vehicle. The appellant appeared to be highly intoxicated.

Pearland EMS was called to address injuries at the scene. The appellant's wife complained of chest and rib pain, and she said that she could not move her right arm. The appellant's wife refused to be taken to the hospital by Pearland EMS; according to testimony, the driver of the other vehicle told Officer Tran that she would take the appellant's wife in for medical treatment.

After the appellant's wife left with her friends, the appellant was arrested and taken to the Pearland Police Department. Video from the police car's dashboard camera indicates that Officer Tran arrived at the accident scene at 2:36 a.m., and that he helped appellant get out of a police car at the Pearland Police Department at 3:33 a.m. Once at the police department, Officer Tran read a statutory warning to appellant regarding his ability to refuse to voluntarily supply a breath sample. When Officer Tran requested a breath sample, the appellant refused to consent. At that point, Officer Tran took the appellant to a local medical center for a mandatory blood draw.

The appellant filed a motion to suppress the blood specimen taken during the mandatory blood draw. At a hearing on that motion, Officer Tran testified that he ordered the mandatory blood draw "based on the [totality] of the circumstances and based on my belief that [the appellant's] wife was hurt and that [sic] need medical attention." Also during that hearing, video clips taken from the dashboard

2

camera recording of the incident were played. In response to questions from the appellant's counsel, Officer Tran testified that the appellant's wife had not promised to go to a hospital but stated that he still believed she would seek medical attention that night.

The trial court denied the appellant's motion to suppress, and the appellant pleaded guilty to a reduced charge as part of a plea agreement. In this appeal, the appellant challenges the trial court's denial of his motion to suppress and alleges that section 724.012(b)(1)(C) of the Texas Transportation Code is unconstitutional.

## ANALYSIS

### I. Motion to Suppress

The appellant argues that the trial court should have granted his motion to suppress because the evidence "[does] not allow for any support for the possible assertion that anyone had 'been transported to a hospital or a medical facility for medical treatment.'"

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Vasquez v. State*, 324 S.W.3d 912, 918 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). The trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented at a suppression hearing. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, but we review *de novo* the court's application of the law to the facts. *Id.* at 25. When the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *State v.*

3

*Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Officer Tran ordered the mandatory blood draw under the authority of section 724.012 of the Texas Transportation Code. In relevant part, that section provides:

> (b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for [driving while intoxicated] and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
>
> (1) the person was the operator of a motor vehicle or watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident:
>
>       *            *            *
>
> (C) an individual other than the person has suffered bodily injury and has been transported to a hospital or other medical facility for medical treatment.

Tex. Transp. Code Ann. § 724.012(b) (Vernon 2011).

The appellant's argument misstates statutory requirements for a mandatory blood draw. The Transportation Code does not require that someone actually be transported to a hospital or medical facility for medical treatment; rather, it requires that the police officer ordering the mandatory blood draw reasonably believe that someone was transported to a hospital or medical facility for medical treatment. *See id.*; *see also Mitchell v. State*, 821 S.W.2d 420, 424-25 (Tex. App.—Austin 1991, pet. ref'd) (concluding, based on a predecessor of section 724.012, that a police officer was justified in obtaining an involuntary blood sample when the officer could reasonably believe that a person injured in the accident "was likely to die," even though the injured person actually survived).

4

Therefore, the critical issue is whether Tran reasonably believed that the appellant's wife had suffered an injury and had been transported to a medical facility for treatment. An officer's reasonable beliefs are issues of fact. *See e.g.*, *Holmes v. State*, 248 S.W.3d 194, 200 (Tex. Crim. App. 2008) (noting that contested fact issues included "that Officer Frank did not reasonably believe that the defendant was holding a garden hoe; that Officer Frank did not reasonably believe that the defendant might have been involved in a 'disturbance' with Alice Manning; [and] that Officer Frank did not reasonably believe that the defendant was attempting to evade detention by trotting or running away").

Because the trial court denied the appellant's motion to suppress, we assume that the trial court implicitly determined that Officer Tran possessed the reasonable belief required to justify the mandatory blood draw as long as that determination is supported by the record. *See Ross*, 32 S.W.3d at 855. Officer Tran's testimony and the video taken at the scene of the accident both support the determination that Officer Tran reasonably believed the appellant's wife had suffered an injury and had been transported to a medical facility by the time he ordered the appellant's mandatory blood draw. We give almost total deference to that determination. *See Wiede*, 214 S.W.3d at 25; *Ross*, 32 S.W.3d at 855.

Accordingly, we overrule the appellant's first issue.

## II.     Constitutional Challenge

In his second issue, the appellant argues that section 724.012(b)(1)(C) is "unconstitutional when employed to require a blood draw in an arrest for the misdemeanor offense of driving while intoxicated."

The constitutionality of a statute is a question of law we review *de novo*. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007); *McMillian v.*

*State*, 388 S.W.3d 866, 870 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We begin with the presumption that the statute is valid and that the legislature did not act arbitrarily and unreasonably in enacting it. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *McMillian*, 388 S.W.3d at 871. If a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity. *McMillian*, 388 S.W.3d at 871. The burden rests upon the person who challenges a statute to establish its unconstitutionality. *Id.* We must uphold a statute if we can determine a reasonable construction which will render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979); *McMillian*, 388 S.W.3d at 871.

The withdrawal of a blood specimen from a person is considered a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966). The Fourth Amendment to the United States Constitution, and Article I, Section 9 of the Texas Constitution, protect against unreasonable searches and seizures. U.S. Const. Amend. IV; Tex. Const. art. I, § 9. A search or seizure conducted without a warrant is *per se* unreasonable absent a recognized exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000).

Chapter 724 of the Texas Transportation Code, which governs this case, mandates the taking of blood samples from persons suspected of driving while intoxicated in certain circumstances. *See Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002); *Aviles v. State*, 385 S.W.3d 110, 115 (Tex. App.—San Antonio 2012, pet. ref'd). Chapter 724 "gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant." *Beeman*, 86 S.W.3d at 616.

6

A person who has been arrested for the offense of operating a motor vehicle while intoxicated and in a public place is deemed to have consented to the taking of one or more specimens of blood or breath to analyze the alcohol concentration amount or presence of a controlled substance. Tex. Transp. Code Ann. § 724.011 (Vernon 2011); *Aviles*, 385 S.W.3d at 115. The person retains the right, subject to automatic suspension of his license, to refuse to give a specimen. Tex. Transp. Code Ann. 724.013 (Vernon 2011); *Aviles*, 385 S.W.3d at 115-16. However, if the person refuses to provide a specimen voluntarily and the arresting officer reasonably believes an individual other than the person has suffered bodily injury and has been transported to a hospital or other medical facility for medical treatment, then the officer "shall require the taking of a specimen of the person's breath or blood." Tex. Transp. Code Ann. § 724.012(b)(1)(C).

The appellant contends that section 724.012(b)(1)(C) is unconstitutional in this context because it is objectively unreasonable to order a mandatory blood draw in non-felony cases. The entirety of appellant's argument reads as follows:

> In *Schmerber*, the Court's analysis that allowed for the warrantless seizure of a blood specimen hinged specifically on the officer's belief that he was confronted with an emergency in which a delay to obtain a warrant may have allowed for the destruction of evidence. Obviously, it is not 1966. Obviously, the expedited availability of blood seizure warrants is common knowledge amongst Texas law enforcement. More importantly, Officer Tran testified that this was never an intoxication assault investigation. No emergency. No felony. Not constitutionally cognizable.

We construe this contention liberally as an argument that the State failed to discharge its burden to establish an exception to the warrant requirement. We reject this argument.

7

The Supreme Court recently addressed "whether the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *Missouri v. McNeely*, 133 S. Ct. 1552, 1556 (2013). *McNeely* involved a driver who refused to give a breath sample when he was stopped for erratic driving; police drove him directly to a hospital and obtained a warrantless blood draw less than 30 minutes after the initial stop. *Id.* at 1556-57. The Court held that the fact of alcohol dissipation over time, standing alone, did not support a *per se* rule authorizing warrantless blood draws. *Id.* at 1568. "Because this case was argued on the broad proposition that drunk-driving cases present a *per se* exigency, the arguments and the record do not provide the Court with an adequate analytic framework for a detailed discussion of all the relevant factors that can be taken into account in determining the reasonableness of acting without a warrant." *Id.* "[W]e hold, consistent with general Fourth Amendment principles, that exigency in this context must be determined case by case based on the totality of the circumstances." *Id*. at 1556.

In so holding, the Supreme Court in *McNeely* discussed its earlier decision in *Schmerber*. The petitioner in *Schmerber* was arrested at a hospital while receiving treatment for injuries suffered in an accident involving the car he had been driving. *Schmerber,* 384 U.S. at 758. The arrest occurred within two hours of the accident. *Id.* at 769. At the hospital, a police officer ordered a physician to take a blood sample from the driver without obtaining a warrant. *Id.* at 758, 768. After acknowledging that "[t]he importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great," the Court found the blood draw to be constitutionally valid:

The officer in the present case, however, might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.' *Preston v. United States*, 376 U.S. 364, 367 (1964). We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

*Schmerber*, 384 U.S. at 770-71.

*McNeely* states that "our analysis in *Schmerber* fits comfortably within our case law applying the exigent circumstances exception." *McNeely*, 133 S. Ct. at 1560. "In finding the warrantless blood test reasonable in *Schmerber*, we considered all of the facts and circumstances of the particular case and carefully based our holding on those specific facts." *Id*. "[B]ecause an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results." *Id*. at 1561. "This fact was essential to our holding in *Schmerber*, as we recognized that, under the circumstances, further delay in order to secure a warrant after the time spent investigating the scene of the accident and transporting the injured suspect to the hospital to receive treatment would have threatened the destruction of evidence." *Id.* (citing *Schmerber*, 384 U.S. at 770).

Applying the teaching of *McNeely* and *Schmerber,* we reject appellant's constitutional challenge to section 724.012(b)(1)(C) and its operation under the circumstances presented in this case.

Nothing in *McNeely* or *Schmerber* suggests that the characterization of the offense at issue as a misdemeanor or a felony affects the constitutional analysis. The statute does not purport to authorize a warrantless blood draw based solely on the natural metabolization of alcohol in the bloodstream; instead, it sets forth multiple, specific circumstances in which a blood draw is required. The circumstances here do not involve solely the natural metabolization of alcohol in the bloodstream.

The specific circumstances at issue here involved the officer's reasonable belief that an individual suffered bodily injury that warranted transportation to a hospital or another medical facility for treatment. As in *Schmerber,* time had to be taken to investigate the scene of the accident and determine the need for medical treatment. Video from the dashboard camera shows that at least 57 minutes elapsed from the time Officer Tran arrived on the accident scene until he and the appellant arrived at the Pearland Police Department. Officer Tran read the statutory warnings after their arrival, and the appellant refused to voluntarily give a breath sample; the blood was drawn thereafter. These facts parallel *Schmerber,* and they demonstrate that the warrantless blood draw in this case did not violate appellant's constitutional rights. This holding, which is tied to the specific facts presented on this record, comports with the Supreme Court's recognition that "some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test." *McNeely,* 133 S. Ct. at 1561.

We overrule the appellant's second issue.

## CONCLUSION

Having overruled both of the appellant's issues, we affirm the judgment of the trial court.

/s/  William J. Boyce
    Justice

Panel consists of Justices Boyce, Jamison, and Busby. (Busby, J., dissenting).

Publish — Tex. R. App. P. 47.2(b).